UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| E & G, Inc., individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>Mount Vernon Mills, Inc. and John Does 1-5,<br><br>Defendants. | Civil Action No.: 6:17-cv-00318-AMQ<br><br><br><br>**OPINION AND ORDER** |

Before this Court is Defendant Mount Vernon Mills, Inc. ("Mount Vernon")'s Motion for Summary Judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 50.) The Court held a hearing on this Motion on May 29, 2018, and has considered the arguments of the parties, as well as the briefing submitted and the entire record in this case. For the reasons set forth herein, Mount Vernon's Motion for Summary Judgment is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff E & G, Inc. ("Plaintiff") filed this action on February 2, 2017, as a class action lawsuit against Defendants Mount Vernon and John Does 1-5 alleging Defendants violated the federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("TCPA"). Plaintiff contends Defendants have sent facsimile transmissions of unsolicited advertisements to Plaintiff and the class in violation of the TCPA, including the facsimile transmission which is the subject of the instant litigation ("subject fax"), sent on or about December 1, 2015. (ECF No. 1 at 2.) Plaintiff filed an initial Motion for Class Certification and Request for Status Conference on February 7, 2017. (ECF No. 6.) That motion

was denied on March 28, 2017, without prejudice and with leave to re-file. (ECF No. 22.) The parties proceeded with bifurcated discovery in this action with Phase I discovery limited to the issues of: (1) whether Plaintiff was a Wyndham franchisee at the relevant time and consented to received fax advertisements from Wyndham; (2) whether Plaintiff had an existing business relationship with Wyndham Worldwide Corporation and its subsidiaries or affiliates; (3) and any other facts relevant to the issue as to whether the faxes are considered "solicited" or "unsolicited" under the applicable law and regulations. (ECF No. 42 at 1-2.) The instant Motion was filed on December 15, 2017 at the conclusion of the Phase I discovery and replies and responses have been filed.

## STANDARD OF REVIEW

A court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 123-24 (4th Cir. 1990). Thus, at the summary judgment phase, "[t]he pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, No. 17-1503, 2018 WL 1916320, at *3 (4th Cir. Apr. 24, 2018)(internal citation and quotation marks omitted).

# ANALYSIS

At issue in this case is what Seventh Circuit Judge Frank Easterbrook has termed "another of the surprisingly many junk-fax suits under 47 U.S.C. § 227, the Telephone Consumer Protection Act, which together with the FCC's implementing regulations establishes some simple rules that many fax senders ignore." *Chapman v. First Index, Inc.*, 796 F.3d 783, 784 (7th Cir. 2015). The Telephone Consumer Protection Act ("TCPA") prohibits the use of "any telephone facsimile machine, computer, or other devise to send, to a telephone facsimile machine, an unsolicited advertisement" unless:

> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> (ii) the sender obtained the number of the telephone facsimile machine through–
> > (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
> > (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,
> except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and
> (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D)…

47 U.S.C. § 227(b)(1)(C). The TCPA defines the term "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 463 (4th Cir. 2018). In sum, liability may exist under the TCPA if the transmissions were unsolicited, taking into account the business relationship and prior communications, and opt-out language.

The statute provides a private right of action to enforce its provisions. A person or entity may bring an action: (1) to enjoin such a violation; (2) "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater;" or (3) "both such actions." 47 U.S.C. § 227(b)(3). If the Court finds that a defendant willfully or knowingly violated this subsection of the regulations, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount of the plaintiff's award for statutory or actual damages. *Id.*

Plaintiff E&G is a West Virginia corporation which owns three hotels, including the Wingate by Wyndham hotel which purportedly received the subject fax. (ECF No. 54 at 4.) The subject fax is a single page (referencing Mount Vernon's Riegel division) of a five-page transmission allegedly received by Plaintiff on or around December 1, 2015.[1] (ECF No. 50-1 at 2.) At this time, there are no additional plaintiffs and class certification has been denied without prejudice. (ECF No. 22.) Based on the representations in the complaint, and in the parties' briefing, the subject fax was sent on a single occasion. The issues are narrow in this regard and the potential liability under the statute, limited at this stage of the litigation.

Mount Vernon has submitted the entirety of the subject fax for the record in conjunction with its Motion, a copy of which it says was received from a subpoena from Plaintiff to a third-party. (ECF No. 50-6.) Each of the pages includes certain disclaimers by Wyndham Worldwide Corporation and its affiliates, opt-out language by Wyndham Worldwide entities, and the logo of Wyndham Hotel Group. (ECF No. 50-6.) Each page of the five-page fax includes a date stamp

---

[1] Although Plaintiff's complaint would suggest otherwise, the "subject fax" is in fact a single page that is part of a "five-page fax sent to certain franchisees that included reference to Riegel's products, and the products of four other Approved Suppliers," as acknowledged in Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 53 at 9.) The Court finds Plaintiff's representations to the contrary incomplete at best.

4

of "12-01-05," a page number reference, i.e., 2/5, and two numbers, 973-753-7483 and 304-744-4343, respectively. (ECF No. 50-6.)

Mount Vernon argues that: (1) Plaintiff expressly consented to receive faxes such as the one at issue through its franchise relationship with Hotel Franchising Limited Partnership d/b/a Wingate Inns, LLC, a division or affiliate of Wyndham Worldwide Corporation (referred to as "Wyndham"); and alternatively, (2) that the fax was not sent by Mount Vernon, but was instead sent on behalf of Wyndham in conjunction with its franchise sourcing program promoting approved suppliers. (ECF No. 50-1 at 1-3.) In response, Plaintiff: (1) argues that neither Wyndham nor Mount Vernon had prior express permission to send Plaintiff fax advertisements; (2) challenges the sufficiency of the opt-out language; and (3) disputes Mount Vernon's argument that Wyndham, not Mount Vernon was the sender of the subject fax. (ECF No. 54 at 2-3.)

The Court first addresses the argument that Plaintiff expressly consented to receiving the fax. In its motion, memorandum and oral argument, Mount Vernon argues that the fax was solicited because Plaintiff consented to receive faxes from Wyndham by entering a franchise agreement whereby it agreed that Wyndham and affiliates could offer assistance to Plaintiff, a franchisee, in purchasing items for use at the hotel. Mount Vernon further maintains that this consent passes as a matter of law to Mount Vernon as one of Wyndham's vendors. (ECF No. 50-1 at 15-16.) Given the nature of a franchisor/franchisee relationship, and Mount Vernon's relationship with Wyndham by extension, this is a reasonable and logical argument. Indeed, it seems odd that a franchisee, who consents to its franchisor to receive information about approved vendors, would complain when the vendor supplies such information and it is transmitted by the franchisor. However, at this stage of the case, Mount Vernon has not

5

established as a matter of law that there was any such express permission for purposes of their motion for summary judgment. In fact, Plaintiff has offered testimony to the contrary, to include the deposition of Mount Vernon's Vice President of Sales Christopher Gowdy on the issue of lack of prior express permission for the transmission of fax advertisements. (ECF No. 54 at 5.)

The burden is ultimately on the defendant to show that it obtained the necessary prior express invitation or permission. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) (noting that express consent is not an element of a TCPA plaintiff's prima facie case but an affirmative defense for which the defendant bears the burden of proof); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01, 2006 WL 1151584 (May 3, 2006) ("2006 FCC Rule") ("In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given.") Mount Vernon, however, has provided no case law or other guidance, and this Court has not found any, that would suggest express invitation or permission can be imputed as the issues have been framed in this motion.

Again, Mount Vernon may ultimately prevail on this issue. However, an issue of fact remains as to whether express invitation or permission was given to Plaintiff by Mount Vernon. It is not for the Court to decide credibility, weigh the evidence, or decipher the nature, contours, and import of the various agreements and any permissible actions which may be implicated by this unique set of facts. Mount Vernon has not established as a matter of law the initial threshold issue concerning whether the fax was solicited (or not).

The second issue raised by Mount Vernon also raises questions of fact—who is the "sender" of the subject fax? Mount Vernon acknowledges that its goods and services are advertised on one page of the subject fax, but argues that the subject fax was sent on behalf of

Wyndham, thereby making Wyndham the sender for purposes of liability under a "totality of the circumstances" review. (ECF No. 50-1 at 16.) Plaintiff disputes this point, contending that Mount Vernon constitutes "a sender" in that the subject fax was sent on its behalf, and because Mount Vernon's goods are advertised in the subject fax (ECF No. 54 at 28.) The 2006 FCC Rule provides some initial guidance: "The Commission takes this opportunity to emphasize that under the Commission's interpretation of the facsimile advertising rules, *the sender is the person or entity on whose behalf the advertisement is sent. In most instances, this will be the entity whose product or service is advertised or promoted in the message.* As discussed above, the sender is liable for violations of the facsimile advertising rules, including failure to honor opt-out requests. Accordingly, the Commission adopts a definition of sender for purposes of the facsimile advertising rules." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01, 2006 WL 1151584 (May 3, 2006)(emphasis added).

It may be the case that the subject fax was not sent on Mount Vernon's behalf. But the Court cannot say so as a matter of law. The use of Wyndham's name, fax number, logo and the opt-out language included on the fax, could lead a reasonable fact finder to conclude that Wyndham was the "sender" of the subject fax. But a reasonable fact finder could also find otherwise, in considering the involvement of Mount Vernon in the design process, payment for participation and the authorization extended to Wyndham for the transaction. Mount Vernon recognizes that its products were advertised on one page of the subject fax and that some level of inquiry as to potential sender liability is triggered. (ECF No. 50-1 at 17.) The Court, however, cannot weigh the several factors articulated by Mount Vernon in its motion to determine on whose behalf the advertisement was sent. *See Cin-Q Auto., Inc. v. Buccaneers Ltd. P'ship*, No.

7

8:13-CV-01592-AEP, 2014 WL 7224943, at *8 (M.D. Fla. Dec. 17, 2014) ("Viewed through this lens, in the instant case, "on whose behalf" is a question for which material issues of fact exist in the record. In reaching this conclusion, the Court is mindful that it must draw all inferences and facts in a way most favorable to the non-moving party… Having done so, sufficient disagreement exists as to the nexus between the offending conduct and BLP, the alleged party on whose behalf the faxes were sent.")  Summary judgment is not appropriate here.

Because Mount Vernon has failed to show it is entitled to summary judgment as a matter of law on the issue of "express invitation or permission" necessary to establish that the subject fax was solicited under the TCPA, and, further, that it was not the sender of the fax, the Court need not address whether the opt-out rule is required in express consent situations, or the applicability of the D.C. Circuit's holding in *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078 (D.C. Cir. 2017) regarding opt-out notices inclusion on solicited fax advertisements.[2]  Additionally, Mount Vernon did not move for summary judgment on the issue of established business relationship ("EBR") and stated at the hearing on this matter that it did not intend to do so for the purposes of this motion.  Thus, the Court will not weigh in as to whether the requirements for that defense have been met, or whether EBR has any bearing on the issue of prior express invitation or permission.  Those issues are not before the Court and it would be inappropriate for this Court to address such matters at this time.  Mount Vernon has moved the Court for summary judgment in its favor on

---

[2]  As it has done in this Opinion and Order, the Court will continue to apply the FCC interpretations of the TCPA as mandated by the Fourth Circuit in *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 466 (4th Cir. 2018) ("[W]e hold that the jurisdictional command of the Hobbs Act requires a district court to apply FCC interpretations of the TCPA.").

the grounds that Plaintiff expressly consented to sourcing faxes as part of its franchise agreement, and that the subject fax was sent on behalf of Wyndham.  Mount Vernon has not made the necessary showing for the purposes of summary judgment.  Thus, the motion must be denied.

## **CONCLUSION**

For the reasons stated above, Mount Vernon's Motion for Summary Judgment (ECF No. 50) is DENIED.

**IT IS SO ORDERED.**

/s/ A. Marvin Quattlebaum, Jr.
United States District Judge

June 12, 2018
Greenville, South Carolina