IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| E& G, Inc., a West Virginia corporation, individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> Mount Vernon Mills, Inc., and John Does 1-5, <br><br> Defendants. | **REPLY OF DEFENDANT MOUNT VERNON MILLS, INC.'S IN SUPPORT OF MOTION TO EXCLUDE EXPERT** <br><br> C.A. No. 6:17-cv-00318-TMC |

The plaintiff's primary argument in opposition to Mount Vernon Mills' Motion to Exclude its expert Robert Biggerstaff is that he has been qualified as an expert by many other courts. That may be the best argument that the plaintiff has, but it does not foreclose this Court's evaluation of his opinions and work in this case.

In its Memorandum in Opposition to the Motion to Exclude,[1] the plaintiff understandably directs attention away from the most troubling, and least supportable aspects of Biggerstaff's opinions in this case. Specifically, the plaintiff ignores its expert's deposition testimony that contradicts statements in the Plaintiff's Opposition, ignores the speculative character of Biggerstaff's opinions, and completely glosses over opinions he is not qualified to make.

Critical issues in a *Daubert* analysis are: (a) whether the purported expert's opinions are supported by appropriate validation;[2] and (b) whether they will assist the trier of fact.[3] Biggerstaff's opinions cannot satisfy either standard.

---

[1] ECF #110, "Plaintiff's Opposition".

[2] *Daubert v. Merrell Dow Pharms., Inc.,* 113 S.Ct. 2786, 2795 (1993).

[3] Rule 702, Federal Rules of Evidence.

93935708.v1

**I.     Biggerstaff's opinions about the ease with which the individualized issue of consent can be accomplished are neither appropriately validated, nor will they assist the trier of fact.**

The plaintiff attempts to validate its expert's unsupported speculation that it will be no problem to identify fax recipients and determine consent, by denying that they are legal opinions or that they are unsupported. But saying so does not make it so.

Mr. Biggerstaff defined the scope of his pertinent expertise as "the process of fax initiation, conversion to a digitized format, and transmission to a recipient machine."[4] He specifically denied any legal training.[5] Despite this void, he opines as to the power of federal subpoenas, how subpoena recipients will promptly reply to subpoenas (despite his own objection to the subpoena issued to him in this case), and what data the unidentified recipients[6] will produce.[7] Whether these are "legal" opinions or just speculation, they are unsupported and exceed the bounds of claimed expertise.

In addition, in denying that these opinions are beyond the scope of its expert, the plaintiff ignores testimony elicited during deposition contrary to those opinions. As explained more completely in the Defendant's Memorandum in Support of this Motion,[8] Biggerstaff admitted at deposition that recent FCC statements contradicted his assumptions about the availability and quality of subscriber data retained by providers, and further admitted that he had no basis on which

---

[4] Deposition of Robert Biggerstaff ("Biggerstaff Dep.") (ECF 101-5), page 13, line 2 to page 15, line 1; and page 18, lines 7-11.

[5] Biggerstaff Dep., pages 9, 7-10.

[6] Biggerstaff admitted that he did not know the identities of the carriers for the telephone numbers on the fax log. Biggerstaff Dep., page 81, lines 14-18.

[7] Defendant's Memorandum in Support of Motion to Exclude (ECF 101-1) ("Defendant's Memo"), pages 5-8.

[8] Defendant's Memo, pages 9-10.

to doubt the accuracy of the FCC's statements.[9] The plaintiff fails to mention that testimony in its Opposition.

Mr. Biggerstaff's deposition testimony completely undermines the opinion on which the plaintiff bases its assertion that determining individualized consent will be easy. Based as they are on speculation, and controverted by Biggerstaff's deposition, these opinions will not assist the trier of fact.

## II.     Biggerstaff's proffered challenges to FCC Regulations and the interpretation of statutes and regulations deserve to be ignored.

The plaintiff dismisses its expert's broad opinions in areas outside his expertise as "not legal opinions, but rather expert opinions."[10] Perhaps Mr. Biggerstaff can be excused for opining as to what the FCC considers a fax machine, but surely his opinions about what is or is not relevant to the case, the federal subpoena process, and thoughts about errors in FCC Orders,[11] are legal opinions which he is not qualified to make. Plaintiff's attempt to label them with a different badge cannot substitute for Mr. Biggerstaff's lack of legal expertise.

## III.    Biggerstaff relies on old, unconfirmed data.

The plaintiff tries to sidestep its expert's use of old, unconfirmed data in two ways. First, it says that even if the data are old, more recent (but unidentified) data would make the numbers even better for the plaintiff; and second, that the 3% figure that Biggerstaff uses was confirmed by his reference to Gartner reports.[12] The first is mere surmise, and the second is misleading.

---

[9] Biggerstaff Dep., page 68, line 7 to page 70, line 6.

[10] Plaintiff's Opposition, page 13.

[11] Biggerstaff Dep., page 28, line 20 – page 29, line 2, in which he testified that the FCC's interpretation of the existing business relationship defense to the TCPA was "void ab initio" because it was contrary to the statute and legislative history.

[12] Plaintiff's Opposition, page 10.

3

Mr. Biggerstaff never mentioned his use of any data other than what was specifically mentioned in his Report. Thus, he cannot know – nor can we – what the effect of theoretical more recent data might be. The plaintiff argues that Biggerstaff confirmed the 3% figure through Gartner reports. But what the plaintiff neglects to mention is that Biggerstaff hadn't seen Gartner reports recently: "I haven't seen any in a few years . . . ."[13] And, the plaintiff doesn't attempt to address any of the other old data sets that Biggerstaff used.

At deposition and in his Report, Biggerstaff identified only two items on which he relied as the basis for his report – the list of fax numbers and the Complaint. He confirmed such reliance at deposition.[14] Nowhere in the Report or in the deposition did he identify any other basis for reliance. The Wyndham list, to which the plaintiff refers in the Opposition, is not identified in the Report, nor did Biggerstaff identify it in response to the direct request to identify any other items on which he relied.

The plaintiff invites the Court to believe that a fax report and a previously uncited Wyndham list cure all the possible discrepancies to which Mr. Biggerstaff felt necessary to apply confirmatory processes in other cases. Whatever one's view of that argument, it does not cure all the other factual deficiencies in Biggerstaff's Reports or opinions.

A *Daubert* analysis acknowledges that expert gatekeeping is required, lest a witness who testifies as an expert be afforded deferential credibility by a factfinder. Expert witnesses have the power to be both "powerful and misleading."[15] Where an expert has a greater potential to mislead

---

[13] Biggerstaff Dep., page 64, line 12.

[14] See Biggerstaff Dep., page 18, lines 7-14 and Biggerstaff Report (ECF 101-2), paragraph 10.

[15] *Daubert,* 113 S.Ct. at 2798.

than enlighten, the evidence should be excluded. *Westberry v. Gislaved Gummi, AB,* 178 F.3d 257 (4th Cir. 1999). On that basis alone, this expert should be excluded.

        Respectfully submitted,

        s/Natalma M. McKnew
        Natalma M. McKnew (#186)
        M. Kevin McCarrell (#10427)
        Thomas W. Epting (#732)
        Fox Rothschild LLP
        2 West Washington Street, Suite 1100 (29601)
        Post Office Box 87
        Greenville, SC 29602-0087
        864-751-7600 / 864-751-7800 (fax)
        tmcknew@foxrothschild.com
        kmccarrell@foxrothschild.com
        tepting@foxrothschild.com
        *Attorneys for Defendant*
        *Mount Vernon Mills, Inc.*

Date: April 24, 2019